UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARIO A. VELAZQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:16-CV-238 |
| | § | |
| RUBEN DE LA ROSA MARTINEZ, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Third-Party Defendants moved for summary judgment against Third-Party Plaintiffs' claims for indemnification (Dkt. Nos. 215, 218, 219). This Court referred those motions to United States Magistrate Judge Song Quiroga, who issued a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(3) recommending that summary judgment be granted (Dkt. No. 243). Specifically, Judge Song Quiroga found that the Third-Party Plaintiffs are not "sellers" of the shipping containers at issue in this case for indemnification purposes under the Texas Products Liability Act, Tex. Civ. Prac. & Rem. Code Ann. § 82.002 (Dkt. No. 243 at 1). Third-Party Plaintiffs filed objections to the Report and Recommendation (Dkt. No. 244). In sum, they argue that the Report and Recommendation (1) "places undue legal, evidentiary, and factual burdens on the non-movants;" (2) fails to make requisite findings of fact; (3) disregards relevant portions of the statute at issue; (4) "disregards important facts, or does not hold them in the light most favorable to non-movants;" and (5) fails to recognize that Benteler Automotive and Benteler-Mexico have raised genuine

issues of material fact that they each meet the statute's definition of a "seller" (Dkt. No. 244 at 2–3).[1]

The Court conducts a de novo review of the objections and applies a plain-error standard of review for the rest of the proposed findings and recommendations. Having considered the entire record and all evidence in the light most favorable to the Third-Party Plaintiffs, the Court agrees that neither of the Third-Party Plaintiffs is a seller of the product at issue under Texas law. Accordingly, Third-Party Defendant's Motions for Summary Judgment (Dkt. Nos. 215, 218, 219) are hereby **GRANTED**. In support of its holding, the Court makes the following findings of fact and law.

Here, Benteler-Mexico manufactures and sells rear axles to Benteler Automotive (Dkt. No. 233 at 4). When transporting these rear axles, Benteler-Mexico uses Benteler Automotive's custom-made dunnage, often referred to as "termos" (Solis Dep. at 39; Cantor Dep. at 42–43).[2] Third-Party Defendants designed and manufactured these termos for Benteler Automotive (Benteler Automotive Resps. at 7). Each termos consists of a base, lid, and straps, and can hold four BMW rear axles (Hall Dep. at 25, 54). Benteler Automotive provides these termos to Benteler-Mexico for use in shipping the rear axles from Benteler-Mexico's facility in Puebla, Mexico to

---

[1] Plaintiff also objected to the Report and Recommendation (Dkt. No. 245), arguing that he had standing to file a response in opposition to the Third-Party Defendants' Motion for Summary Judgment (Dkt. No. 232). This Court agrees with the Report and Recommendation that Plaintiff lacks standing in the third-party lawsuit for statutory indemnification, and further agrees that, even if Plaintiff had standing, Plaintiff's response would not alter the Court's decision here (*see* Dkt. No. 243 at 6 & n.18).

[2] For the sake of brevity and clarity, the Court will cite to the evidence by the same naming conventions used in the Report and Recommendation. It will likewise cite to the page number of the exhibits as they appear on the actual document, rather than the docket page number.

Benteler Automotive's facility in Duncan, South Carolina (Solis Dep. at 44–45). Once Benteler Automotive receives the shipment of axles, it collapses the termos and ships them back to Benteler-Mexico for use in the next shipment of rear axles (Solis Dep. at 44–45; Hall Dep. at 31–32). In this way, the termos are repeatedly reused to ship the auto parts from Benteler-Mexico to Benteler Automotive. Throughout this process, Benteler Automotive remains the sole owner of the termos.[3]

In defense of their position, Third-Party Plaintiffs assert that they are "sellers" of the termos at issue and therefore entitled to indemnity by Third-Party Defendants, manufacturers of the termos. "The Texas Product Liability Act gives the innocent seller of an allegedly defective product a statutory right to indemnity from the product's manufacturer for losses arising out of a product-liability action." *Centerpoint Builders GP, LLC v. Trussway, Ltd.*, 496 S.W.3d 33, 35–36 (Tex. 2016). The Act's indemnity provision states:

> A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

Tex. Civ. Prac. & Rem. § 82.002(a). The purpose of the statute is to "remedy the

---

[3] Both Benteler Automotive and Benteler-Mexico admit that neither has ever sold the termos (Benteler Automotive Resps. at 6; Benteler-Mexico Resps. at 6). They note, however, that the termos are included on point of purchase orders created when Benteler Automotive orders the BMW parts from Benteler-Mexico (*see* Benteler Defs.' Ex. A). But termos are included at no cost (*id*. at 2). In the shipment at issue in this lawsuit, Benteler-Mexico charged Benteler Automotive $26,232.00 for 240 rear axles (*id*.). Sixty termos, including lids and bases, were included in the purchase order for $0.00 (*id*.). The Third-Party Plaintiffs did submit an invoice in which a price of $1.00 is listed for each base and each lid of the termos, but the invoice notes that the price is listed only for customs purposes (*id*. at 6).

3

fundamental unfairness inherent in a scheme that holds an innocent seller liable for defective products manufactured by another by requiring the manufacturer to indemnify the seller" in certain cases. *Owens & Minor, Inc. v. Ansell Healthcare Prods., Inc.*, 251 S.W.3d 481, 487 (Tex. 2008). But a manufacturer's duty to indemnify under the statute only extends to "sellers" of a product. Tex. Civ. Prac. & Rem. § 82.002(a). Therefore, "an indemnity claimant's seller status is a necessary prerequisite to maintaining a claim." *Centerpoint Builders*, 496 S.W.3d at 36.

The statute defines a seller as: "[A] person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." Tex. Civ. Prac. & Rem. § 82.001(3). Importantly, the Texas Supreme Court has held that in choosing language "substantially similar" to the court's common-law definition of seller, the Texas legislature intended the statute's seller definition to mirror the common law definition. *Centerpoint Builders*, 496 S.W.3d at 39, n.5. Thus, while no caselaw is directly on point, there is ample caselaw applying the seller definition—either under Section 82.002 or the common law of strict liability—for this Court to reach its conclusion that neither Third-Party Plaintiff is entitled to indemnification by Third-Party Defendants. [4]

---

[4] Where the question before the Court requires the application Texas law to a fact pattern Texas courts have never addressed, the Court is "required to predict the Texas Supreme Court's determination of this novel issue." *Nazari v. Kohler Co.*, No. 07-50188, 2008 WL 4542850, at *2 (5th Cir. 2008). It is emphatically not this Court's job to determine for itself what it thinks is the best interpretation of the law. *Id.*

4

First, neither Benteler Mexico nor Benteler Automotive are sellers of the termos. Both Texas courts and federal courts applying Texas law have distinguished companies that are "sellers" and "in the business of" distributing a product from companies whose distribution of a product is merely "incidental." *Centerpoint Builders*, 496 S.W.3d at 40–41. To distinguish between incidental products and those which the company is "engaged in the business of" distributing, courts have looked at business objective, profit, and whether the transactions are regular or occasional. *See id.* at 41–42 (noting that "pricing structure" is pertinent and that the overall contract was for construction of a building, not selling of material); *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 405 (Tex. 2008) (finding strict liability attached to companies "whose business is selling, not everyone who makes an occasional sale" and thus does not apply to an auctioneer, even when that auctioneer held title to the product at issue.).

Here, the exchange of the termos between Benteler-Mexico and Benteler Automotive is incidental to the production, sale, and purchase of the rear axles, which is the ultimate purpose of the transaction here. Benteler-Mexico is thus engaged in the business of producing and selling rear axles and their use of the termos, which it does not even own, is incidental to that business. Benteler Automotive is not engaged in the business of selling or otherwise placing either the termos or the rear axles. Instead, it is a purchaser of the rear axles and the end-user of the termos.

Second, the termos are not in the channels of commerce, as required by the Act's indemnity provision. According to Texas courts, a product is only in the stream

5

of commerce when it is either sold or "released in some manner to the consuming public." *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex. 1978) (interpreting seller under strict liability); *see also PS Investments, L.P. v. S. Instrument & Valve Co.*, 438 S.W.3d 638, 643 (Tex. App. 2014), *pet. denied*. Release means to relinquish some "interest in" or "control" of the product, *see Culton v. Saks Inc.*, No. 4:04-CV-3001, 2006 WL 2729408, at *3 (S.D. Tex. Sept. 25, 2006), and "consuming public general includes buyers, potential buyers, and buyers of intimately connected products, *see Armstrong Rubber*, 570 S.W.2d at 377 (collecting cases on buyers of intimately connected products); *Nazari v. Kohler Co.*, No. 07-50188, 2008 WL 4542850, at *3 (5th Cir. Oct. 13, 2008) (discussing shoppers at retail store). But end-users of a product, employees, independent contractors, and some hired companies are not a part of the consuming public. *See F & F Ranch v. Occidental Chem. Corp.*, No. 14-09-00901-CV, 2011 WL 1123402, at *5 (Tex App. Mar. 29, 2011) (end-user of chemicals); *Armstrong Rubber*, 570 F.2.2d at 376 (independent contractor who tested tire under strict liability); *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004) (finding that even though a company bailed its trailers to an independent contractor for the purpose of shipping its goods for sale to another entity, the company was not engaged in the business of placing the trailers in commerce and was therefore not strictly liable to the independent contractor).

Here, the termos are not in the stream of commerce because they have not been released to the consuming public. Rather, Benteler Automotive is the end-user of the termos and it bails the termos to Benteler Mexico "solely for its own business

purposes," which is insufficient to satisfy the requirement that the product be released to the "consuming public." *See FFE Transp. Servs.*, 154 S.W.3d at 89.

Third, and finally, the Court further finds that the termos and the rear axles are not, as Third-Party Plaintiffs argue (Dkt. Nos. 233–35), a single integrated product. A company that sells a product can sometimes also be considered the seller of an intimately connected product. This proposition arises in strict liability cases that tend to involve containers or packaging in which a product is sold. Restatement (Second) of Torts § 402A (1965) ("No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole."); *Armstrong Rubber*, 570 S.W.2d at 376–77 (collecting out-of-state cases regarding intimately connected products that are bailed alongside the sale of another product). A common example is a gas seller's bailment of a gas tank or burner in the same transaction as the sale of gas. *See, e.g., Bainter v. Lamoine LP Gas Co.*, 24 Ill. App. 3d 913, 916 (1974) ("[T]he furnishing of the tank by the defendant and the use thereof by the plaintiff was an incident of the sale of gas and the consideration for the sale included the use of the tank."); *Fulbright v. Klamath Gas Co.*, 271 Or. 449, 460 (1975) (noting that the "two are theoretically inseparable").

Here, to the extent that the Benteler Defendants argue that the termos are part of the product sold to BMW, the summary judgment evidence forecloses this argument. The termos are never sold to BMW because the termos are removed from the rear axles before reaching BMW (Solis Dep. at 44–45; Hall Dep. at 31–32, 56–57).

They are, therefore, not "purchased by the user or consumer as an integrated whole." Restatement (Second) of Torts § 402A.

The termos are also not an integrated part of the product that Benteler-Mexico sells to Benteler Automotive. The case law involving containers and packaging, including the out-of-state cases cited by the two Benteler Defendants, stand simply for the proposition that a seller who sells a product in the seller's *own* container can be considered a seller of that container as well. *See, e.g.*, *Harmon Contract Glazing, Inc. v. Libby-Owens-Ford Co.*, 493 N.W.2d 146, 148 (Minn. Ct. App. 1992) (seller of glass and provider of crating); *Fulbright*, 271 Or. at 460 (seller of gas and provider of vine burner); *Roth v. NorFalco*, No. 06-CV-1452, 2008 WL 859267, at *3 (M.D. Pa. Mar. 28, 2008) (seller of acid and provider of railroad tank car); *Coca Cola Bottling Co., Inc. of Vicksburg v. Reeves by Reeves*, 486 So.2d 374, 380 (Miss. 1986) (seller of coke bottles and provider of cardboard crating).

Those cases are inapposite here because the termos are owned by Benteler Automotive, the receiver and purchaser of the rear axles, rather than by Benteler-Mexico, the shipper and seller of the rear axles (Solis Dep. at 39; Cantor Dep. at 42–43, 49). Benteler-Mexico sells rear axle auto parts. (Benteler Defs.' Ex. G). To aid in the shipment of those axles, Benteler-Mexico packages the product in the buyer's—Benteler Automotive's—own containers according to the buyer's detailed specifications. (Benteler Specification Sheet; Cantor Dep. at 41, 44; Dkt. No. 233-2, Ex. B at 69). By way of illustration, Benteler-Mexico is not analogous to a gas company that sold gas and bailed to a customer a tank in which to store the gas. *See*

8

*Bainter*, 24 Ill. App. 3d at 916. Rather, Benteler-Mexico is more akin to a gas seller who filled up a customer's own gas tank and shipped it back to him. In such a situation, the gas seller would surely not be liable to the owner of the gas tank for injuries the owner suffers from her own gas tank even if the gas and gas tank might otherwise be considered an integrated product. Accordingly, the Court finds that the termos and the rear axles are not a single integrated product.

Benteler-Mexico is the seller of rear axles, and it is not engaged in the business of selling, or otherwise placing, either termos or a single integrated termos-auto part product in the stream of commerce. Benteler Automotive is not engaged in the business of selling, or otherwise placing, any of the above. Instead, it is the purchaser of the rear axles and the end-user of the termos. Thus, neither of the Third-Party Plaintiffs is a seller for indemnification purposes under Texas law. Accordingly, this Court **GRANTS** Third-Party Defendants' motions for summary judgment (Dkt. Nos. 215, 218, 219).

It is so **ORDERED**.

**SIGNED** October 16, 2020.

_____
Marina Garcia Marmolejo
United States District Judge